J-A09028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                    :          PENNSYLVANIA
             Appellant          :
                                      :
                                      :
            v.                :
                                      :
                                      :
KIRK JACKSON                  :    No. 444 EDA 2018

Appeal from the Order January 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0029287-2017,
MC-51-CR-0029288-2017

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY MURRAY, J.:                  **FILED APRIL 30, 2019**

The Commonwealth appeals from the order denying its motion to refile aggravated assault and recklessly endangering another person (REAP) charges against Kirk Jackson (Appellee).  Upon review, we reverse and remand for further proceedings.

Appellee was charged at two separate criminal dockets as a result of an incident that occurred on September 1, 2017.  The criminal complaint at docket number 29287-2017 states:

> At or near 3647 Germantown Ave[.] [Appellee] threatened or intentionally put another in fear of serious injury by approaching [Paul Riley] and producing a firearm, and pointing it at [Riley,] racking the gun[,] and pulling the trigger multiple times[.]

Docket Number 29287-2017 Criminal Complaint, 10/2/17, at 1.  The criminal complaint at docket number 29288-2017 reads:

_____

* Retired Senior Judge assigned to the Superior Court.

At or near 3647 Germantown Ave[.] the [Appellee] threatened or intentionally put another in fear of serious injury by approaching [Curtis Gardner] and producing a firearm, and pointing it at [Gardner,] racking the gun[,] and pulling the trigger multiple times[.]

Docket Number 29288-2017 Criminal Complaint, 10/2/17, at 1.

The affidavit of probable cause provides:

On 9-1-17 at 10[:]51pm, in the city and county of Philadelphia, Pa, [Paul Riley] was working at the Clock Bar at 3647 Germantown Avenue when [Appellee] . . . attempted to gain entry into the club[,] however was not allowed to be inside due to a previous incident where he assaulted a female patron[.] [Riley] stated to him that he couldn't come inside and [Appellee] became enraged and pulled a small handgun from his waistband and aimed the weapon at [Riley], pulling the trigger twice but no round fired[.] [Riley] grabbed [Appellee] and both males began fighting until they fell back on the ground. While on the ground, [Appellee] who still [had] the gun in his hands, pointed the weapon again at [Riley], pulling the trigger 2 more times but again, no rounds discharged[.] [Riley] again fought of[f Appellee] until some of the patrons pulled [Riley] away from [Appellee]. [Riley] fled into the front door of the Clock Bar and was able to see [Appellee] walk off northbound on Germantown Avenue towards Erie Avenue and stop in front of the Eagle Bar which is located on the corner[.] [Curtis Gardner], who was working as uniform security at the Eagle Bar, was approached by the manager from Clock Bar and relayed to him that [Appellee], who at the time is standing by the curb, had pointed a small handgun at [Riley,] who was working [s]ecurity as well[.] [Gardner], along with several patrons, confronted [Appellee] about the incident at the Clock Bar as he is standing by the curb line on Erie Avenue east of Germantown Avenue[.] A[n] argument ensued and [Appellee] pull[ed] out a handgun and starts aiming the weapon at [Gardner] and several other patrons who were standing outside of the [b]ar[.] [Gardner] took cover behind a parked car and observed through the window of the car [Appellee] aiming the weapon in his hands at several people who were waiting on the route 23 bus stop and them fleeing on foot as a result. [Appellee] took off running towards Broad Street and [was] last observed in the area walking northbound.

[A police officer] was working solo in full uniform . . . in a marked vehicle when he responded to a radio call for a person with a gun at the Clock [B]ar located at Broad and Erie St. While en route to the address he was flagged down by a male, wearing dark clothing and carrying a black pack, who stated that he was assaulted outside of the Clock [B]ar by another male[.] The male, later [identified] as [Appellee] stated that he was carrying a weapon and that he had a permit to carry[.] . . . [An additional police officer] arrived on location at the Clock [B]ar and secured [Riley,] who along with another [s]ecurity guard from the Eagle Bar, [Gardner], who stated that [Appellee] had a small handgun in his hands and had aimed it at the both of them on the highway[.] [Riley] and [Gardner] were brought to [Appellee's location where] they positively [identified] him as the male who pointed the gun at them and pulled the trigger several times[.] Recovered from [Appellee] was a black Jimenez arms .380, serial #160505, loaded with 4 rounds in the magazine and no round in the chamber[.] . . . Also recovered was [] 1 magazine with 5 live [.]380 rounds and 36 loose rounds in a box inside of box which was inside of his book bag[.] [Appellee's] permit to carry . . . and Act 235 card . . . [were] also confiscated as well for investigation[.]

Affidavit of Probable Cause, 10/3/17, at 2.

As a result of his alleged actions on September 1, 2017, Appellee was charged with two counts each of aggravated assault, REAP, possession of an instrument of crime, and simple assault.[1] At the preliminary hearing held on October 18, 2017, the Commonwealth presented the testimony of Paul Riley and Curtis Gardner.

Mr. Riley, a 30-year employee of the Clock Bar located at 3657 Germantown Avenue in the city of Philadelphia, testified that he was working as security at the bar on September 1, 2017. N.T., 10/18/17, at 4-5. Mr. Riley testified that he was "on [his] guard" when he saw Appellee approaching

_____

[1] 18 Pa.C.S.A. §§ 2702(a), 2705, 907, and 2701.

- 3 -

the entrance of the Clock Bar on September 1, 2017 because he had had three prior incidents with him. *Id.* at 6-7. According to Mr. Riley, Appellee approached the Clock Bar wearing a black hoodie with the "hoodie pulled tight" and a black backpack. *Id.* at 6. Upon seeing Appellee, Mr. Riley stood up, and Appellee reacted by pulling up his shirt. *Id.* at 6. While Appellee's shirt was up, Mr. Riley testified that he saw a "dirty silver handle of a gun in [Appellee's] pants . . . on his right side waist area." *Id.* at 8.

Mr. Riley further testified that Appellee "put his hands" on the firearm, and at that point, Mr. Riley "[p]ut [his] hand overtop [sic] of his hand so that he [could not] pull it up and I sw[u]ng at him." N.T., 10/18/17, at 9, 14. Appellee then proceeded to drop back "into the street about three, four feet, pulls [the firearm] from his waistband, and aims it at" Mr. Riley, and "pulls the trigger twice." *Id.* at 9. Mr. Riley noted that while the firearm failed to fire, it was aimed at his body when Appellee pulled the trigger. *Id.*

Mr. Riley testified that Appellee then returned the firearm to his waistband, at which point Mr. Riley and Appellee began to engage in a fist fight. *Id.* The second time he knocked Appellee back, Mr. Riley testified that Appellee "pulled the pistol out again, [trying] to fire at me again." N.T., 10/18/17, at 9. However, Mr. Riley testified that the firearm again failed to discharge, and at that point, an employee grabbed Mr. Riley by his collar in an attempt to pull him inside the bar. *Id.* The last time he saw Appellee, Mr. Riley saw him "walking towards Erie Avenue, which is towards Germantown . . . going up the block." *Id.* at 10.

Mr. Gardner, who testified that he was in the area of 3647 Germantown Avenue in the City of Philadelphia on September 1, 2017 in his capacity as the head of security for both Eagle Bar and the Clock Bar, was located at the entrance of the Eagle Bar when he was approached by the manager of the Clock Bar. *Id.* at 18. Mr. Gardner subsequently approached Appellee, who was in front of the Clock Bar, leaning up against a car and talking on a cell phone. *Id.* at 19. After approaching Appellee, and attempting to question him about the prior altercation with Mr. Riley, Mr. Gardner testified that Appellee pulled out a firearm and pointed it at him. N.T., 10/18/17, at 20.

Mr. Gardner further testified that Appellee pulled the trigger twice, but when the weapon failed to fire, Appellee "[t]hen proceeded to pull the slide back so he could chamber another round." *Id.* at 21. Mr. Gardner provided the following testimony about what transpired:

> Then [Appellee] pointed it at the other individuals that were standing next to me. Then I fell on the ground and as I hit the deck, my head hit the pavement. I looked up. He is pointing it at the individuals waiting for the bus. There was a woman and child that were screaming. She almost knocked the baby over trying to get away from this individual pointing the weapon at the people at the bus stop. Then, at my restaurant, the Eagle Bar, people were standing outside waiting for their steaks because the line goes outside. They started scattering. A woman was almost hit by a bus because of this individual pointing his weapon. Then he pulled the slide back twice again on Germantown Avenue and pointed at us again . . . at the crowd that was in front of the Clock Bar. Then he proceeded to go to Broad and Erie. Then he made a left turn and went down Broad Street. I was tracking him on the other side of the street because I wanted to find out exactly where he was going. . . . I went back to check on [Mr. Riley] at the front door of the Clock Bar to find out exactly what happened. At that time an unmarked police vehicle pulled up.

N.T., 10/18/17, at 21-22.

After conversing with the police officer, Mr. Gardner testified that the officer took him to Broad Street where he positively identified an individual standing next to a police vehicle as Appellee. *Id.* at 22-23. After identifying Appellee, Mr. Gardner witnessed the police remove a firearm from Appellee, "[take] the clip out of the weapon, put handcuffs on him, and put him in the back of a police vehicle." *Id.* at 23.

Other than the testimony of Mr. Riley and Mr. Gardner, the only other evidence submitted at the preliminary hearing was a stipulation by both parties that the weapon recovered from Appellee was a "black semi-automatic Jimenez Arms pistol, 380 auto . . . [o]perability, FIU report, operability, yes." N.T., 10/18/17, at 30-31. At the conclusion of the hearing, the municipal court dismissed both of the Commonwealth's cases for lack of evidence.

The Commonwealth subsequently filed notices of refiling of a criminal complaint, at each docket number, with the trial court. Argument was held on December 22, 2017. On January 8, 2018, the trial court granted the Commonwealth's motion to refile charges as to possession of an instrument of a crime and simple assault, but denied the Commonwealth's motions to refile aggravated assault and REAP charges. The trial court remanded both cases to the municipal court for further proceedings on the remaining charges.

On February 6, 2018, the Commonwealth filed an interlocutory appeal of the trial court's January 8, 2018 order.[2] Both the Commonwealth and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. The trial court opined that the Commonwealth failed to establish *prima facie* cases of aggravated assault and REAP. Trial Court Opinion, 5/21/18, at 8, 9.

Conversely, the Commonwealth presents a single, multi-part issue for our review:

> Did the Commonwealth present sufficient evidence to establish a *prima facie* case of aggravated assault and reckless endangering another person where [Appellee] aimed his gun at the victims and pulled the trigger at least five times on a crowded public street?

Commonwealth Brief at 4. In arguing that it established *prima facie* cases of both offenses, the Commonwealth asserts that the trial court "failed to consider the evidence in the light most favorable to the Commonwealth." ***Id.*** at 8.

At the outset, we recognize:

> It is settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary. The trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial *prima facie* burden to make out the elements of a charged crime. Therefore, we are not bound by the legal determinations of the trial court.

_____

[2] In compliance with Pennsylvania Rule of Appellate Procedure 311(d), in its notice of appeal, the Commonwealth "certifies . . . that the order will terminate or substantially handicap the prosecution" of Appellee. Commonwealth Notice of Appeal, 2/6/18, at 1.

*Commonwealth v. Ouch*, 199 A.3d 918, 923 (Pa. Super. 2018) (citations omitted).

Further, the law is well-settled as to the *prima facie* standard required of the Commonwealth:

> "A *prima facie* case consists of evidence, **read in the light most favorable to the Commonwealth**, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime." *Commonwealth v. Black*, 108 A.3d 70, 77 (Pa. Super. 2015) (citation omitted). As we have previously explained:

>> The Commonwealth establishes a *prima facie* case when it produces evidence[] that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. **Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case**.

> *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2011) (internal citations and quotations omitted) (emphasis added). Moreover, "suspicion and conjecture are not evidence and are unacceptable as such." *Commonwealth v. Packard*, 767 A.2d 1068, 1071 (Pa. Super. 2001) (citations omitted). Proof beyond a reasonable doubt is not required. *Black*, 108 A.3d at 70; *see* [*Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991)] (noting that the *prima facie* hurdle is less demanding than the Commonwealth's burden at trial of proving guilt beyond a reasonable doubt).

***Ouch***, 199 A.3d at 923 (emphasis in original).

The Commonwealth claims that the trial court incorrectly determined that it failed to prove *prima facie* cases of aggravated assault for Appellee's actions on September 1, 2017. Commonwealth Brief at 9-14. "A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under the circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Section 2301 provides that serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

"When no serious bodily injury results from the accused actions, the Commonwealth must prove that he attempted to cause another to suffer such injuries." ***Commonwealth v. Lopez***, 654 A.2d 1150, 1154 (Pa. Super. 1995) (citations omitted). We have stated:

> For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent,[3] acts in a manner which

---

[3] Section 302 provides the following as to the *mens rea* of intent:

> (1) A person acts intentionally with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

constitutes a substantial step toward perpetrating a serious bodily injury upon another. As our Court has previously stated: An intent is a subjective frame of mind, it is of necessity difficult of direct proof. We must look to all the evidence to establish intent, including, but not limited to, [defendant's] conduct as it appeared to his eyes. Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Commonwealth v. Alford*, 880 A.2d 666, 670-71 (Pa. Super. 2005) (citation omitted). "The finder of fact is free to conclude that the accused intended the natural and probable consequences of his actions to result therefrom." *Commonwealth v. Rosado*, 684 A.2d 605, 608 (Pa. Super. 1996) (citation omitted). "The fact that the accused misapprehended the circumstances, thereby making it impossible for him to commit the crime attended, is not a defense to an attempt crime." *Lopez*, 654 A.2d at 1154 (citing 18 Pa.C.S.A. § 901(b)). Therefore, "if the accused intends to cause serious bodily injury to another, then proceeds to perform all of the acts necessary to do so, the accused can still be guilty of aggravated assault even though completing an aggravated assault is impossible." *Id.* (citations omitted).

The Commonwealth also contends that the trial court incorrectly prohibited it from refiling REAP charges against Appellee at both dockets. Commonwealth Brief at 15-16. An individual is guilty of REAP if "he recklessly engages in conduct which places or may place another person in danger of

---

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1)(i), (ii).

- 10 -

death or serious bodily injury." 18 Pa.C.S.A. § 2705. "To sustain a **conviction** for [REAP], the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so." *Commonwealth v. Martuscelli*, 54 A.3d 940, 949 (Pa. Super. 2012) (citation omitted) (emphasis added). "Danger, not merely the apprehension of danger, must be created." *Id.* However, "[i]n order to make out a *prima facie* case for [REAP], the Commonwealth need only establish that the defendant's conduct placed or **may have placed** another in danger of serious bodily injury or death." *Commonwealth v. Vogelsong*, 90 A.3d 717, 721 (Pa. Super. 2014) (citation omitted) (emphasis added). "The *mens rea* for [REAP] is a conscious disregard of a known risk of death or great bodily harm to another person." *Martuscelli*, 54 A.3d at 949 (citation omitted).

Because REAP "is a crime of assault which requires the creation of danger . . . there must be an actual present ability to inflict harm." *Commonwealth v. Reynolds*, 835 A.2d 720, 727-28 (Pa. Super. 2003) (citations omitted). Therefore, "the pointing of an unloaded weapon, without more, does not constitute [REAP]." *Commonwealth v. Gouse*, 429 A.2d 1129, 1131 (Pa. Super. 1981) (citation omitted).

However, "even if a defendant's gun is unloaded, the surrounding circumstances may be sufficient to sustain a conviction of REAP." *Reynolds*, 835 A.2d at 728 (sustaining a conviction of REAP, where the defendant pointed an unloaded gun at a victim, but "the surrounding circumstances were such that [defendant] created an actual danger by pointing the gun, whether or not

it was actually loaded and capable of firing."). As such, when a charge of REAP involves a firearm, the Commonwealth can either prove the ability to inflict harm by showing either "that the gun was loaded or the surrounding circumstances were inherently dangerous." **Commonwealth v. Baker**, 429 A.2d 709, 711 (Pa. Super. 1981). **See also Martuscelli**, 54 A.3d at 949 ("Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a **fact-finder may conclude** that a defendant proceeded with conscious disregard for the safety of [another], and that he had the present ability to inflict great bodily harm or death.") (citation omitted) (emphasis added); **Commonwealth v. Hartzell**, 988 A.2d 141, 144 (Pa. Super. 2009) ("The act of pointing a loaded gun has been deemed sufficient to support a conviction for REAP.") (citation omitted).

Upon review, we conclude that the trial court, in denying the Commonwealth's request to refile aggravated assault and REAP charges, erroneously viewed the evidence in the light most favorable to Appellee. In viewing the record in a light most favorable to the Commonwealth, the testimony presented at Appellee's preliminary hearing establishes a *prima facie* case of aggravated assault against Appellee at both criminal dockets. If the facts presented by the Commonwealth at Appellee's preliminary hearing are presented at trial, the fact-finder may determine whether Appellee attempted to cause both Paul Riley and Curtis Gardner serious bodily injury. **Lopez**, 654 A.2d at 1155. Likewise, there is sufficient evidence to support *prima facie* cases against Appellee for REAP at both criminal dockets. The trial

court therefore committed an error of law in precluding the Commonwealth from refiling aggravated assault and REAP charges against Appellee.

In its opinion, the trial court cites two considerations in support of its decision: 1) Appellee's firearm was unloaded, and 2) his actions were in self-defense. As to Appellee's alleged aggravated assault of Mr. Riley, the trial court stated:

> Here, there is no evidence that Appellee had the intent to inflict bodily injury on anyone, nor did he threaten, verbalize, or otherwise demonstrate the intent to do so. At most, the testimony showed that Appellee pointed his gun at several people under circumstances that demonstrate that Appellee was not the aggressor; to the contrary, the evidence revealed that Appellee lifted his shirt to show he had a weapon, at which point Mr. Riley put his hands on Appellee. Appellee had a license to carry the firearm and an active Act 235 license, and **the evidence did not establish that there were any bullets available to the gun and in the magazine which would have been noted on the police paperwork**. To the contrary, the testimony indicated that Mr. Riley was the aggressor, that Appellee pointed his weapon at Mr. Riley after Riley had put his hands upon Appellee first, and that, upon seeing the firearm, Mr. Riley struck Appellee. Since the two men began to fistfight thereafter, **it appears that Appellee was acting in self-defense, rather than with the intent to cause serious bodily injury**.

Trial Court Opinion, 5/21/18, at 7-8 (emphasis added, footnotes omitted).

With regard to its decision to deny the refiling of aggravated assault charges against Appellee as to Mr. Gardner, the trial court stated:

> Similarly, with respect to Mr. Gardner, after Appellee left the bar and Mr. Gardner — whose testimony about exactly what happened wasn't clear — approached Appellee while Appellee was on his cellphone, after which, again, Appellee was attacked by two bars' patrons before Appellee took out the gun and pointed it, or pulled the trigger, or ratcheted the **empty** gun. In both instances, although it was alleged that Appellee pulled the trigger of the gun

- 13 -

several times, the weapon did not fire. Therefore, at most, Appellee **pointed an unloaded gun** at two individuals who were the **apparent aggressors**. As such, a *prima facie* case of aggravated assault cannot be sustained.

*Id.* at 8 (emphasis added, footnote omitted). The trial court continued:

At the argument in front of this court on the Commonwealth's refiling of charges, there was a disagreement between counsel as to whether the gun was loaded. *See* Notes of Testimony, Dec. 22, 2017 hearing, p. 9. However, **no ballistics documentation indicated any live rounds in the licensed weapon and magazine whatsoever, which would have been included in the testimony and the ballistics documentation and the other police paperwork.**

*Id.* (emphasis added).

In addressing the REAP charges brought against Appellee for his actions on September 1, 2017, the trial court opined:

Pointing an unloaded weapon, without more, does not constitute recklessly endangering another person. ***Commonwealth v. Grouse***, 429 A.2d 1128 [] ([Pa. Super.] 1981).

As with the charges of aggravated assault, the evidence at the preliminary hearing demonstrated that appellee **pointed an unloaded gun** at several individuals with whom he was having a physical altercation in which they were the aggressors. The Commonwealth was unable to prove either the *mens rea* on the part of Appellee, nor the danger of death or serious bodily injury as to any persons.

Trial Court Opinion, 5/21/18, at 9 (emphasis added).

Upon careful review, we are not persuaded by the trial court's factual or legal analysis. Our examination of the record in a light most favorable to the Commonwealth reveals that on September 1, 2017, Appellee pulled a firearm from his waistband, pointed it at the body of Mr. Riley, and pulled the trigger

- 14 -

twice. N.T., 10/18/17, at 9. However, the firearm failed to fire. *Id.* Thereafter, a fistfight ensued, Appellee pulled the firearm out a second time, again attempting to fire at Mr. Riley, but the firearm again failed to discharge. *Id.*

The evidence presented at the preliminary hearing further shows that after his interactions with Mr. Riley, Appellee encountered Mr. Gardner, who attempted to question Appellee about the incident with one of his employees, Mr. Riley. *Id.* at 19. After being approached by Mr. Gardner, Appellee pulled out his firearm a third time, pointed it at Mr. Gardner, and pulled the trigger two times. *Id.* at 20, 21. However, when the weapon again failed to fire, Appellee "proceeded to pull the slide back so he could chamber another round." *Id.* at 21.

Next, after attempting to discharge the firearm while it was pointed at Mr. Gardner, Appellee pointed the firearm at other individuals who were standing next to Mr. Gardner, and as well as individuals waiting at a nearby bus stop. *Id.* at 21-22. As a result of Appellee pointing the firearm at the people gathered at the bus stop, a woman "almost knocked [a] baby over trying to get away," and people in line at the Eagle Bar began to scatter. N.T., 10/18/17, at 21, 22. During the course of their attempts to escape, "[a] woman was almost hit by a bus because of [Appellee] pointing his weapon." *Id.* at 22. Appellee then pulled the slide on the firearm back two times and pointed it at the crowd outside the Clock Bar. *Id.*

The evidence also showed that shortly after the above events, Mr. Gardner positively identified Appellee as the individual the police had in custody. *Id.* at 23. Mr. Gardner then witnessed the police remove the firearm from Appellee's person and "[take] the clip out of the weapon." *Id.* Finally, the parties stipulated at the preliminary hearing that the firearm recovered from Appellee's person was a .380 semi-automatic pistol. *Id.* at 30.

In denying the Commonwealth's request to refile charges, the trial court primarily relies on the factual conclusion that Appellee's firearm was unloaded because it failed to discharge. We disagree and hold that the Commonwealth offered sufficient evidence to prove *prima facie* cases of aggravated assault and REAP at the preliminary hearing.

We reiterate that "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence **must** be read in the light most favorable to the Commonwealth's case." *Marti*, 779 A.2d at 1180 (emphasis added). The transcript of the October 18, 2017 preliminary hearing, read in a light most favorable to the Commonwealth, fails to support the trial court's conclusion that Appellee's firearm was unloaded. To the contrary, from the testimony presented, a reasonable factfinder could conclude that Appellee's firearm was loaded,[4]

_____

[4] Furthermore, the affidavit of probable cause, which is part of the certified record, states that the firearm taken from Appellee immediately after his interactions with Mr. Riley and Mr. Gardner was "**loaded** with 4 rounds in the magazine and no round in the chamber[.]" Affidavit of Probable Cause, 10/3/17, at 2 (emphasis added).

- 16 -

based upon Appellee's multiple attempts to both discharge the firearm by pulling its trigger, and also his repeated actions of "pull[ing] the slide back so he could chamber another round."  N.T., 10/18/17, at 9, 21.

The only source from which the trial court could have concluded that Appellee's firearm was unloaded was defense counsel's bald assertion that "[i]t was not a loaded gun" at argument held before the trial court on December 22, 2017.  N.T., 12/22/17, at 9.  This assertion was contested by the Commonwealth, but appears to have been accepted by the trial court as fact.  *Id.* (responding to defense counsel's assertion, the trial court stated: "All right.  **It was not a loaded gun**.").  However, defense counsel's assertion at argument is not a proper basis for such finding in determining whether a *prima facie* case of a crime exists, and the trial court therefore erred in using the finding in making its legal determination.

Additionally, the trial court's conclusion that the Appellee acted in "self-defense" was also improper in making the legal conclusion of whether *prima facie* cases exist at the pre-trial stage.  Such a determination under 18 Pa.C.S.A. § 505 is to be made by the fact-finder at trial, and not in preliminary proceedings.  **See Commonwealth v. Torres**, 766 A.2d 342, 345 (Pa. 2001) ("When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a **reasonable doubt**. . . . If there is any evidence that will support the [self-defense] claim, then the issue is properly before the **fact**[-]**finder**.") (citations omitted) (emphasis added); **Commonwealth v. McClendon**, 874 A.2d 1223, 1230 (Pa. Super. 2005) ("It

remains the **province of the jury** to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.") (citation omitted) (emphasis added); ***Commonwealth v. Hill***, 629 A.2d 949, 952 (Pa. Super. 1993) ("The issues of whether a defendant acts out of an honest, bona fide belief [that he was in imminent danger] and whether such belief was reasonable are questions properly resolved by the **finder of fact**.") (emphasis added). Accordingly, the trial court committed further legal error by basing its decision not to let the Commonwealth refile aggravated assault and REAP charges against Appellee on a self-defense determination that is reserved for the finder of fact at trial.

Mindful of the foregoing, our review of the record reveals that as a matter of law, the Commonwealth offered sufficient evidence to prove *prima facie* cases of aggravated assault at both of Appellee's criminal dockets. In the light most favorable to the Commonwealth, the evidence at the preliminary hearing would allow a fact-finder to reasonably conclude that Appellee attempted to cause serious bodily injury to both Mr. Riley and Mr. Gardner when he pointed his firearm at both and pulled the trigger multiple times. ***Commonwealth v. Matthews***, 870 A.2d 924, 929 (Pa. Super. 2005) ("[I]n instances where the defendant has both drawn and fired (**or drawn and misfired**) a gun, we have consistently held that an aggravated assault occurred.") (emphasis added) (citing cases). ***See also Commonwealth v. Chance***, 458 A.2d 1371, 1374-75 (Pa. Super. 1983) ("where the defendant and a bar owner became involved in a struggle and the gun of the defendant

clicked several times while it was pointed at the bar owner, the evidence was sufficient to show an aggravated assault on the bar owner notwithstanding the fact that the gun was not actually loaded.") (citing **Commonwealth v. Bond**, 396 A.2d 414 (Pa. Super. 1978)).

The fact-finder could also conclude that Appellee intended the natural and probable consequences of pointing and pulling the trigger of a firearm, to result therefrom. **Rosado**, 684 A.2d at 608. Impossibility, *i.e.*, the firearm not being able to fire, for any reason, would not be a defense where Appellee mistakenly thought the firearm would discharge while pointed at either Riley or Gardner. **Lopez**, 654 A.2d at 1154 (citing 18 Pa.C.S.A. § 901(b)). Therefore, based upon the evidence offered by the Commonwealth at the preliminary hearing and the reasonable inferences derived therefrom, *prima facie* cases of aggravated assault were established at both dockets.

We further hold that the Commonwealth established *prima facie* cases of REAP. At docket number 29287-2017, the evidence proffered by the Commonwealth at the preliminary hearing established that Appellee may have placed Mr. Riley in danger of death or serious bodily injury by engaging in reckless conduct. **Vogelsong**, 90 A.3d at 721. While we recognize that pointing an unloaded firearm at someone has been previously held as an insufficient basis for a REAP **conviction**, **Gouse**, 429 A.2d at 1131, from Appellee's actions on September 1, 2017, a fact-finder could reasonably infer that Appellee had an actual present ability to inflict harm, *i.e.*, the firearm was loaded. **Reynolds**, 835 A.2d at 727-28. The Commonwealth therefore

carried its *prima facie* burden of establishing that Appellee may have placed Mr. Riley in danger of death or serious bodily injury on September 1, 2017.

As to the REAP charge at docket number 29288-2017, we also hold that pointing a firearm at Mr. Gardner and pulling the trigger multiple times is sufficient to establish a *prima facie* case. However, we note that Appellee's alleged actions at this docket number may also support a conviction under the "inherently dangerous surrounding circumstances" theory, regardless of whether a factfinder concludes Appellee's firearm was loaded when he aimed it at Mr. Gardner and pulled the trigger. *Baker*, 429 A.2d at 711. The Commonwealth carried its burden of establishing that Appellee may have placed Mr. Gardner, and/or those individuals outside the Clock Bar and Eagle Bar, in danger of death or serious bodily injury.

In sum, the trial court incorrectly based its legal conclusions on a factual conclusion unsupported by the record, as well as a premature conclusion that Appellee was acting in self-defense. In reviewing the evidence presented at the preliminary hearing in the light most favorable to the Commonwealth, as we must, we conclude that the Commonwealth met its burden of establishing a *prima facie* case of aggravated assault and REAP at both of Appellee's criminal dockets. To view the evidence otherwise would be to view it in the light most favorable to Appellee.

Accordingly, we reverse the trial court's January 8, 2018 order and remand for further proceedings, including the reinstatement of the charges.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/19